UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUANE CHRISTY and TINA CHRISTY,<br><br>Plaintiffs<br><br>v.<br><br>DESIGNED RECEIVABLE SOLUTIONS, INC.,<br><br>Defendant | Case No.: 2:17-cv-00845-APG-VCF<br><br>**Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment**<br><br>[ECF Nos. 16, 20] |

Plaintiffs Duane and Tina Christy bring this Fair Debt Collection Practices Act (FDCPA) lawsuit against defendant Designed Receivable Solutions, Inc. (DRS). After receiving three collection letters and a phone call from DRS, the Christys sued for violations of: 15 U.S.C. §§ 1692g(a)(3), 1692e(11), and 1692e(14). The Christys seek damages, attorney's fees, and costs. Both parties have moved for summary judgment.[1] I grant summary judgment in favor of DRS on the claims under § 1692g(a)(3) and § 1692e(11). I deny the Christys' motion for summary judgment. However, DRS did not move for summary judgment on the Christys' § 1692e(14) claim, so that claim remains pending.

**Background**

Tina Christy received medical treatment from Marshall Medical Center on June 2, 2016, and the Christys received a final bill from the medical center on September 21, 2016.[2] On October 18, 2016, DRS sent a collection letter to the Christys asking them to call the office

---

[1] ECF Nos. 16, 20.
[2] ECF No. 16 at 25.

regarding their outstanding debt.[3]  DRS sent a second, identical collection letter 31 days later.[4]  DRS sent a third and final collection letter on December 19, 2016.[5]  The third letter states "[p]ayment in full must be received by the hospital within 10 days from the date of this letter."[6]  On January 30, 2017, DRS called Duane Christy regarding Tina Christy's debt.  During that phone call, Duane Christy said he would be filing suit against DRS.[7]

## Discussion

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[8]  The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, discovery responses, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  Material facts are those that may affect the outcome of the case[10] and are considered genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[11]  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[12]

---

[3] *Id.* at 35–36.
[4] *Id.* at 38–39.
[5] *Id.* at 44–45.
[6] *Id.* at 44.
[7] ECF No. 17-2 at 4.
[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[9] Fed. R. Civ. P. 56(a).
[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[11] *See id.*
[12] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

Courts apply a burden-shifting analysis when determining whether summary judgment is appropriate. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[13] In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[14] If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[15]

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[16] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[17] In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by

---

[13] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

[14] *See Celotex*, 477 U.S. at 323–24.

[15] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

[16] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[17] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

factual data.[18] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[19]

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.[20] The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[21] But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[22]

### A. 15 U.S.C. § 1692g(a)(3)

The FDCPA is a strict liability statute[23] enacted to protect consumers from unscrupulous debt collection practices "without imposing unnecessary restrictions on ethical debt collectors."[24] Congress enacted the FDCPA to combat the problem of debt collectors harassing the wrong person or attempting to collect debts that have already been paid.[25] Regardless of the amount in controversy, I have jurisdiction over an action seeking to enforce liability for an alleged violation of the Act for up to one year from the date of the alleged violation.[26]

---

[18] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
[19] *See Celotex*, 477 U.S. at 324.
[20] *See Anderson*, 477 U.S. at 249.
[21] *Id.* at 255.
[22] *See id.* at 249–50.
[23] *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).
[24] S. Rep. No. 95-382 at 1696 (1977).
[25] *Swanson v. So. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).
[26] 15 U.S.C. § 1692k(d).

Section 1692g(a) ensures debt collectors adequately inform consumers of their legal rights by requiring that the initial communication with the consumer regarding the debt contain: (1) "the amount of the debt"; (2) the creditor's name; (3) a statement that the collector will assume the debt is valid if the consumer does not dispute the debt's validity within 30 days after receiving notice; (4) a statement that if the consumer disputes the debt, the debt collector will mail the consumer verification of the debt or a copy of a judgment; and (5) a statement that the debt collector will provide the consumer with the name and address of the original creditor upon request if the current creditor is not the original one.[27]

Whether an initial communication violates the FDCPA depends on whether it is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'"[28] The objective least sophisticated debtor standard is lower than a reasonable debtor standard and is designed to protect uninformed or naïve consumers of below average sophistication or intelligence when they are targeted by debt collectors.[29] However, this standard still holds the consumer to a standard of reasonableness, and debt collectors are not liable for "bizarre, idiosyncratic, or peculiar misinterpretations."[30]

Section 1692g enumerates the notice's required content but does not specify a required form. To be an effective conveyance, the notice must be "large enough to be easily read and

---

[27] *Id*. § 1692g(a).

[28] *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (quoting *Swanson*, 869 F.2d at 1225) (quotation omitted).

[29] *Gonzales*, 660 F.3d at 1061–62.

[30] *Id*. at 1062 (quotation omitted) (the standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." (quotation omitted)).

5

sufficiently prominent to be noticed" and "must not be overshadowed or contradicted by other messages or notices" in the initial communication.[31]  Whether language in a collection letter overshadows or contradicts the validation notice so as to confuse a least sophisticated debtor is a question of law.[32]

The Christys claim DRS violated § 1692g(a)(3)[33] because its notices were (1) not sufficiently prominent and easily read and (2) did not contain disclosures required by Nevada law.

### 1. Easily read and sufficiently prominent

DRS argues that having the notices on the reverse side of the letter is not a per se violation of § 1692g and that the font size is consistent for the entire letter.  The Christys contend that reverse-side-disclosures are an FDCPA violation, and they rely on three cases in support: *Riviera v. MAB Collections, Inc.*, *Rabideau v. Mgmt. Adjustment Bureau*, and *Keli v. Universal Fidelity Corp.*[34]

DRS's collection letter satisfies the least sophisticated debtor standard because the front of the letter adequately directs the reader to the disclosures on the reverse side and the disclosures themselves are displayed in a manner that is both easily read and sufficiently prominent.  DRS's notice twice directs the reader to the reverse side, once in the body of the

---

[31] *Swanson*, 869 F.2d at 1225.

[32] *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).

[33] 15 U.S.C. § 1692g(a)(3) ("[A] statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.").

[34] *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1988); *Rabideau v. Mgmt. Adjustment Bureau*, 805 F. Supp. 1086 (W.D.N.Y. 1992); *Keli v. Universal Fidelity Corp.*, No. Civ. 96–00366ACK, 1997 WL 33820142 (D. Haw. Feb. 25, 1997).

letter and again above the detachable payment slip. The notice above the detachable payment slip is on the middle of the front page in white capital letters on a distinctive black ribbon of ink.[35] No other notice or language in the letter is set out in this manner. The font size of the ribbon text is slightly smaller than the "detach payment" language right below it, but not smaller than the other text on the page.[36] The disclosures on the reverse side are printed in black ink on white paper and are the same size font as the front of the page.

All of the collection letters in *Riveria*, *Rabideau*, and *Keli* violated § 1692g because they were not easily read or prominent, but those cases are distinguishable from this case. In *Riveria*, the collection letter did not instruct the reader to the reverse side for the required disclosures.[37] In both *Rabideau* and *Keli*, the debt collector violated § 1692g not because the notices were on the reverse side but because the language directing the reader to the reverse side was not prominent enough.[38] Additionally, the letters in *Rabideau* and *Keli* violated the statute because the disclosures were printed in light gray ink making them difficult to see.[39]

In contrast, DRS's letter prominently directed the reader to the reverse side for the notices and the notices were printed in black ink on a white background in a font size consistent with the front of the letter. DRS's prominent notices are easily read and sufficiently prominent

---

[35] ECF No. 16 at 35.

[36] *Id.*; *cf. Swanson*, 869 F.2d at 1225 (where notice was "dwarfed by a bold faced underlined message three times the size which dominates the center of the page").

[37] *Riveria*, 682 F. Supp. at 177.

[38] *Keli*, 1997 WL 33820142 at *4–5 (holding the language directing the reader to the reverse side for the notices was overshadowed by other language on the front page); *Rabideau*, 805 F. Supp. at 1093–94 (holding the language directing the reader to the reverse side was on the tear-off portion of the letter, which may mislead the reader to look on the reverse side of only the tear-off portion).

[39] *Keli*, 1997 WL 33820142 at *4–5; *Rabideau*, 805 F. Supp. at 1093.

7

to inform a least sophisticated debtor. Therefore, I grant summary judgment in favor of DRS on this claim.

### 2. Notices Required by Nevada Law

The Christys also claim DRS violated § 1692g because the initial collection letter did not contain the warnings required under Nevada law when a debt collector is attempting to collect a debt on behalf of a hospital. DRS admits that its collection notices do not contain the Nevada warnings but contends it is still entitled to summary judgment because a violation of Nevada law is not coextensive with an FDCPA violation. The Christys argue that the state and federal laws in question are coextensive and that DRS's failure to provide the Nevada notices deprives them of material information that would impact their rights regarding the debt. Alternatively, they request leave to amend their complaint to add a state law claim.

A plaintiff cannot establish an FDCPA violation merely by showing a debt collector violated state law because not every violation of state law is an FDCPA violation.[40] The pertinent question is whether the debt collector's conduct is an independent violation of the FDCPA.[41] There may be situations where failure to provide a state-required notice violates the FDCPA, but this is typically not the case if the debt collector has not acted in a deceptive or unconscionable manner and the FDCPA-required notices are given.[42]

---

[40] *Wade*, 87 F.3d at 1100 (finding that debt collection practices in violation of state law are not per se violations of the FDCPA).

[41] *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014).

[42] *See Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1058 (9th Cir. 2002) (finding no FDCPA violation where the defendant did not use a false representation or deceptive means to collect a debt and gave the required notices under § 1692g(a)); *Khosroabadi v. No. Shore Agency*, 439 F. Supp. 2d 1118, 1124–25 (S.D. Cal. 2006) (finding that requiring debt collectors to comply with state-law-required notices would force them to comply with the most restrictive state's provisions or risk being found to have violated federal law).

"[T]he FDCPA does not require the debt collector to advise the consumer of all statutory rights or requirements."[43] "Congress determined what notice debt collectors would be required to give, and it chose not to require additional notice."[44] Nevada requires notices that are essentially fulfilled by the FDCPA disclosures. Nevada Revised Statutes § 649.332(2)(a)(1) requires a debt collector to advise the consumer that if they pay or agree to pay the debt or any portion of it, the payment or agreement to pay may be considered an acknowledgement of the debt. DRS's FDCPA-compliant notice[45] advised the Christys that if they did not dispute the validity of the debt, in whole or in part, then DRS would assume the debt is valid. Even by the least sophisticated debtor standard, DRS's notice would not mislead the consumer into either believing that he or she could not dispute the debt or inadvertently acknowledging a debt and paying it.

Section 649.332(2)(a)(2) requires debt collectors to advise the consumer that if they pay or agree to pay the debt or any portion of it, that may also be construed as a waiver of the statute of limitations. Even assuming that the lack of this notice could constitute an FDCPA violation, the Christys have not alleged that DRS was attempting to collect a time-barred or expired debt.

Section 649.332(2)(b) requires debt collectors to advise the debtor that if he or she does not understand or has questions concerning his or her rights or obligations relating to the debt, the debtor should seek legal advice. The FDCPA, however, requires only the enumerated notices listed under § 1692g, which DRS provided. Including the additional notice about seeking legal

---

[43] *Preston v. Clark Cty. Collect. Servs.*, No. 2:14-cv-000210-APG-PAL, 2014 WL 6882626, at *4 (D. Nev. Dec. 4, 2014).

[44] *Id.* at *5.

[45] Section 1692g(a)(3).

9

advice could have provided the Christys with more information, but the FDCPA does not require DRS to do so.[46] The fact that Nevada requires additional notices when collecting a debt on behalf of a hospital does not subject DRS to federal liability.[47] I therefore grant DRS's motion for summary judgment on this claim.

The Christys request leave to amend this claim to pursue the alleged violation under Nevada law rather than under federal law. Specifically, the Christys seek to assert claims under § 649.332 and § 449.759.[48] However, there is no private right of action under § 649.332.[49] I need not decide whether § 449.759 (now § 449A.165) creates a private right of action because such a claim would be coextensive with the Christys' claim under the FDCPA.[50] Section 449A.165 provides that when collecting a debt, hospitals "must act in accordance with . . . the federal Fair Debt Collection Practices Act, as amended, 15 U.S.C. §§ 1692a to 1692j, inclusive, even if the hospital . . . is not otherwise subject to the provisions of that Act." To the extent the Nevada Legislature intended this section to create a private right of action under Nevada law, the Nevada Legislature defined any such claim as being the same as a violation of the FDCPA. Consequently, even if a private right of action exists under § 449A.165, whether DRS violated Nevada law would depend on whether DRS violated the FDCPA.[51] I have already ruled DRS

---

[46] *See Khosroabadi*, 439 F. Supp. 2d at 1124.
[47] *Preston*, 2014 WL 6882626, at *4–6.
[48] ECF No. 19 at 4.
[49] *Preston*, 2014 WL 6882626, at *3.
[50] *Id.*
[51] *Id.*

10

has not violated the FDCPA. Therefore, I deny the Christys' request for leave to amend because it would be futile.[52]

**B. 15 U.S.C. § 1692e**

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means" to collect a debt, and provides a non-exhaustive list of 16 prohibited practices. A debt collector's liability under § 1692e is an issue of law and requires an objective analysis of whether the "least sophisticated debtor" would be misled by a communication.[53] A false or misleading representation must be material in that it frustrates a consumer's ability to intelligently choose his or her response.[54] "[M]ere technical falsehoods that mislead no one" will not give rise to liability under the FDCPA.[55]

*1. 15 U.S.C. § 1692e(14)*

Section 1692e(14) prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." The Christys argue DRS's notice would mislead a least sophisticated debtor[56] into thinking the notices were from Marshall Medical Center rather than from DRS. On the Christy's motion, they bear the initial burden of establishing they are entitled to judgment as a matter of law. They have not met that burden because they present no evidence that listing Marshall Medical Center

---

[52] *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000) (a district court acts within its discretion to deny leave to amend when amendment would be futile).

[53] *Gonzales*, 660 F.3d at 1061 (quotation omitted).

[54] *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

[55] *Id*. at 1034.

[56] The Christys incorrectly use the "reasonable person" standard in their motion. ECF No. 16 at 11. The proper standard is the "least sophisticated debtor." *Donohue*, 592 F.3d at 1030 (quotation omitted).

on the notices was deceptive. Additionally, the evidence DRS presents suggests it was not deceptive because a DRS representative indicated in the January 2017 phone call that DRS was collecting on Marshall's behalf and that DRS did not own the debt.[57] I therefore deny the Christys' motion for summary judgment.

DRS did not move for summary judgment on this claim and failed to mention it at all until its reply in support of its own motion.[58] Therefore, I deny summary judgment for DRS on this claim.

### 2. 15 U.S.C. § 1692e(11)

Section 1692e(11) holds debt collectors liable for "failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and for "failure to disclose in subsequent communications that the communication is from a debt collector." The Christys assert that DRS violated this statutory provision when a DRS representative called Duane Christy on January 30, 2017, but "explicitly failed to state that he/she was a 'debt collector attempting to collect a debt and that any information obtained will be used for that purpose.'"[59] DRS contends that it is required to give that information only in the initial letter and it did so.

DRS is required to inform the Christys that it is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose only in the initial communication. In subsequent communications, DRS is required to inform the Christys that the

---

[57] ECF No. 20 at 29.
[58] ECF No. 22 at 8.
[59] ECF No. 16 at 12 (quoting § 1692e(11)).

communication is from a debt collector. DRS's first letter contained the requisite language on the reverse side of the initial letter[60] and the phone call transcript shows that DRS adequately informed the Christys that it was a debt collector.[61] DRS did not violate § 1692e(11) of the FDCPA, so I grant summary judgment in its favor on this claim.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiff Duane Christy and Tina Christy's motion for summary judgment **(ECF No. 16) is DENIED**.

IT IS FURTHER ORDERED that defendant Designed Receivable Solutions, Inc.'s motion for summary judgment **(ECF No. 20) is GRANTED**.

IT IS FURTHER ORDERED that the plaintiffs' claim under 15 U.S.C. § 1692e(14) remains pending.

DATED this 21st day of August, 2018.

———————————————————
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[60] *Id.* at 36.

[61] ECF No. 17-2 at 4 ("Good morning, sir. Calls are recorded. We're the debt collector for, uh, for Marshall Medical Center.").